FILED & ENTERED

APR 04 2016

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY cargill      DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### RIVERSIDE DIVISION

| | |
|---|---|
| In re:<br><br>EMPIRE LAND, LLC,<br><br><div align=right>Debtor(s),</div> | Case No.: 6:08-bk-14592-MH<br><br>Chapter: 7<br><br>Adv. No.: 6:10-ap-01329-MH |
| RICHARD K. DIAMOND, Chapter 7 Trustee,<br><br><div align=right>Plaintiff,</div><br>v.<br><br>EMPIRE PARTNERS, INC., a California Corporation, JAMES P. PREVITI, PREVITI REALTY FUND, L.P. a California limited partnership; THE JAMES PREVITI FAMILY TRUST;<br><br><div align=right>Defendants</div> | **MEMORANDUM DECISION ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br><u>Continued Hearing Date</u><br>Date: February 18, 2016<br>Time: 10:00 a.m.<br>Courtroom: 303 |

Before the Court is a motion by Empire Partners, Inc. ("Defendant") for Summary Judgment against chapter 7 trustee, Richard K. Diamond ("Plaintiff").

## I.     PROCEDURAL BACKGROUND

On April 25, 2008 ("Petition Date"), Empire Land, LLC ("Empire Land"), Aviat Homes, L.P. ("Aviat"), Empire Construction, L.P. ("Empire Construction"), Empire Global Holdings, L.P. ("Empire Global"), Empire Residential Construction, L.P. ("ERC"), Empire Residential Sales, L.P. ("ERS"),

Prestige Homes, L.P. ("Prestige"), and Wheeler Land, L.P. ("Wheeler") (collectively "Debtors"), filed

voluntary chapter 11 petitions for relief.  An order approving joint administration of Debtors' cases was

entered on May 5, 2008, which designated Case No. 6:08-bk-14592-MJ (Empire Land) as the lead case.

On December 8, 2008, Debtors' cases were converted from chapter 11 to chapter 7, and Richard K.

Diamond was appointed as the chapter 7 trustee ("Trustee" or "Plaintiff").  An order approving

substantive consolidation of Debtors' cases was entered on September 16, 2009 ("Consolidation

Order").

On April 23, 2010, Trustee filed the instant adversary proceeding against Empire Partners, Inc.

("EPI" or "Defendant"), James P. Previti ("Previti"), Previti Realty Fund, L.P. ("PRF"), and The James

Previti Family Trust ("Previti Trust"), Adv. No. 6:10-ap-01329-MH.  Plaintiff's original complaint

sought avoidance and recovery of a hundred transfers under a preference theory, intentional fraudulent

transfer theory, and/or constructive fraudulent transfer theory.  On April 6, 2011, Plaintiff filed a First

Amended Complaint.  On October 1, 2014, Plaintiff, Previti, PRF, and the Previti Trust filed a

Stipulation for Dismissal without Prejudice of Defendants James P. Previti, Previti Realty Fund, L.P.,

and the James Previti Family Trusty Only, which was approved by order entered on October 2, 2014.

On August 14, 2015, the Court entered an Order Approving Stipulation Re: Filing of Second Amended

Complaint, and on August 17, 2015, Plaintiff filed a Second Amended Complaint.

On August 13, 2014, Defendant filed a Motion for Summary Judgment ("Motion").  On

September 19, 2014, Trustee filed his opposition to the Motion ("Opposition").  On September 24, 2014,

Trustee filed a Notice of Errata to his Opposition and also filed a Corrected Opposition ("Corrected

Opposition").  On May 6, 2015, Trustee filed a Second Corrected Opposition ("Second Corrected

Opposition"). [1]

---

[1] The summary judgment record consists of the following: the Motion; Defendant's Proposed Statement of Uncontroverted Facts ("PSUF"); Declaration of Jeffrey Rosenfeld in Support of Motion ("Rosenfeld Dec."); Declaration of Neil Miller in Support of the Motion ("Miller Dec."); Declaration of Larry Day in Support of the Motion ("Day Dec."); Request for Judicial Notice ("Defendant's RJN"); Second Corrected Opposition; opposition to PSUF and Statement of Genuine Issues ("SGI"); Evidentiary Objections to the Day Dec., Miller Dec, and Rosenfeld Dec. (collectively "Trustee's Evidentiary Objections"); a Request for Judicial Notice ("Trustee's RJN"); Declaration of Peter M. Bransten in Support of the Opposition ("Bransten Dec."); Supplemental Declaration of Peter M. Bransten ("Supp. Bransten Dec."); Declaration of William Haegele ("Haegele Dec."); reply to Trustee's Opposition ("Reply"), Reply to Trustee's SGI; Replies to Trustee's Evidentiary Objections,

Footnote continued on next page.

The hearing on the Motion was originally set for September 24, 2015, and was continued several times.  At a continued hearing on February 18, 2016, the Court took the Motion under submission.

Having considered the Motion, Opposition, the summary judgment record, the argument of counsel at all of the hearings on the Motion, and for the reasons set forth below the Court will DENY Defendant's Motion.

## II.    EVIDENTIARY OBJECTIONS

The Court will rule on Defendant's Evidentiary Objections as follows:

- Overrule Evidentiary Objections to the Declaration of William Haegele.
- Overrule Evidentiary Objections [Dk. 225] to the Declaration of Peter M. Bransten [Dk. 187].
- Overrule Evidentiary Objections [Dk. 298] to the Declaration of Peter M. Bransten to Correct Error in Declaration of Peter M. Bransten [Dk. 292].

The Court will rule on Plaintiff's Evidentiary Objections as follows:

- Overrule Evidentiary Objections to the Declaration of Neil Miller.
- Overrule Evidentiary Objections to the Declaration of Larry Day, except sustain the objections to: paragraph 2, lines 8-9; Exhibit 3; and Exhibit 4.
- Overrule Evidentiary Objections to the Declaration of Jeffrey Rosenfeld, except sustain the objections to: Exhibit 44 to any attorney argument and/or legal conclusions; paragraph 14, lines 21-23 "This document appears to provide the following Transfer Description for a transfer on 7/31/2007: 'BT to reimb Inter-co (Verizon, staples, fed-

---

Declaration of John Loeb in Support of the Reply ("Loeb Dec."); Supplemental Declaration of Jeffrey Rosenfeld ("Supp. Rosenfeld Dec."); Supplemental Request for Judicial Notice ("Supp. RJN"); Evidentiary Objections to the Bransten Dec. and Haegele Dec. (collectively Defendant's Evidentiary Objections"); Responses to Defendant's Evidentiary Objections, including Request for Judicial Notice, Declaration of Peter M. Bransten, Declaration of William Haegele, Declaration of Timothy P. Sullivan, and Declaration of Cynthia M. Cohen; Defendant's Responses and Objections to Additional Evidence; Corrected Declaration of Peter M. Bransten ("Corrected Bransten Dec."); Evidentiary Objection to the Corrected Bransten Dec.; and Response to the Evidentiary Objection to the Corrected Bransten Dec.  The Court does not consider the following documents because they were not filed within the time frame prescribed by the Court, and were otherwise unauthorized: Defendant Empire Partners, Inc.'s Reply to the Trustee's Response to Empire Partner's Inc.'s Objections to the Declaration of Peter M. Bransten to Correct Error in Declaration of Peter M. Bransten [Dk. 300], and Trustee's Response to Defendant Empire Partners, Inc.'s Improper and Unauthorized "Reply" [Dk. 305].

x).'"'; and paragraph 14, lines 25-26 "These documents appear to provide the following Transfer Description for a transfer on 7/12/2007: 'Reimb EP for Rick Miranda Laptop and HP docking station/Case."; and paragraph 14, lines 1-3 (page 6) "This document appears to provide the following Transfer Description for a transfer on 7/25/2007 'Payment to Empire Partners for loan received 9/21/06 recorded in Inter-company.'"

### III.    FACTUAL BACKGROUND

Defendant is a California corporation with its principal place of business in California, and served as either the general partner or managing member for Empire Global, Aviat, Empire Construction and Empire Land.  From the time of formation of each of the entities, Previti served as a director of Defendant and directly or indirectly controlled all of the legal and equitable interests of each of Empire Global, Empire Land, Aviat, Wheeler Land, ERC, ERS, Prestige, and Empire Construction, until the appointment of Plaintiff as chapter 7 trustee.

Debtors

Empire Global was a holding company that had a 99% ownership interest in each of Empire Land and Aviat at all times at issue in the Second Amended Complaint.  Aviat was a holding company that had a 99% ownership interest in Prestige and ERC at all times at issue in the Second Amended Complaint.  ERC was in the homebuilding business in Arizona.  As of March 31, 2008, ERC owned approximately 1,023 residential lots in six different Arizona communities.  ERS marketed and sold homes in ERC in Arizona, taking title to them immediately before the sale for Arizona sales tax purposes.  Prestige was in the homebuilding business in California.

### IV.    DISCUSSION

**Jurisdiction**

This Court has subject matter jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 because those claims arise under title 11 of the United States Code ("Bankruptcy Code") and/or are related to a case pending under title 11.

///

///

///

**Summary Judgment**

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts that show a genuine issue for trial. *Id.* at 324. The court must view the evidence in the light most favorable to the nonmoving party. *Bell v. Cameron Meadows Land Co.*, 669 F.2d 1278, 1284 (9th Cir. 1982). All reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). The inference drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valadingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Insurance Co. of N. Am.*, 638 F.2d 136, 140 (9th Cir. 1981).

If the moving party meets its initial burden, the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *Id.* However, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material fact…" *Matsushita Electrical Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* ""[A]ll that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Anderson*, 477 U.S. at 249 (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288-289 (1968)).

There is no requirement that the trial judge makes findings of fact, but perform a threshold inquiry of determining whether there is a need for trial. *Id.* at 250. "Because credibility determinations, the weighing of the evidence and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, on a motion for summary judgment, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in its favor." *Id.* at 255; *Heller Ehrman LLP v.*

*Jones Day (In re Heller Ehrman LLP)*, 2013 Bankr. LEXIS 889, 22-23 (Bankr. N.D. Cal. Mar. 11, 2013).  On a motion for summary judgment the court's purpose is issue-finding, not issue-resolution. *United States v. One Tintoretto Painting*, 691 F.2d 603, 606 (2nd Cir. 1982).  If the basic facts are undisputed, but reasonable minds could differ on the inferences to be drawn from those facts, summary judgment should be denied.  *Lake Nacimiento Ranch Co. v. San Luis Obispo County*, 841 F.2d 872, 875 (9th Cir. 1987).  *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).  Trial courts may deny summary judgment where there is reason to believe that the better course would be to proceed to a full trial.  *Anderson*, 477 U.S. at 255.

A.  <u>Fraudulent Transfers (Actual Fraud) § 548(a)(1)(A), § 544 and Cal. Civ. Code §3439, and § 550</u>

| Chart A: Intentional Fraud Transfers | | | | |
|---|---|---|---|---|
| Defendant's Transfer #[2] | Date of Transfer | Amount of Transfer | Transferring Debtor | Second Amended Complaint Claim |
| **13** | 5/7/2007 | $767,000.00 | Prestige/Aviat | 7, 8 |
| **14** | 5/8/2007 | $2,000,000.00 | Prestige/Aviat | 7, 8 |
| **15** | 5/22/2007 | $750,000.00 | Prestige/Aviat | 7, 8 |
| **16** | 5/23/2007 | $600,000.00 | Prestige/Aviat | 7, 8 |
| **17** | 5/30/2007 | $1,600,000.00 | Prestige/Aviat | 7, 8 |
| **18** | 5/31/2007 | $450,000.00 | Prestige/Aviat | 7, 8 |

Section 548 of the Bankruptcy Code empowers a bankruptcy trustee to recover "fraudulent transfers" made by the debtor (1) within two years before of the bankruptcy petition if the debtor (2) made such transfer with actual intent to hinder, delay, or defraud any entity to which the debtor was or became...indebted to.  11 U.S.C. § 548(a)(1).  "Because there is rarely direct evidence of actual fraud, courts look to circumstantial evidence, and frequently infer fraudulent intent from the circumstances

---

[2] The Court utilizes Defendant's transfer numbers herein below for ease of reference.

surrounding the transfer, taking particular note of certain recognized badges of fraud." *Acequia, Inc. v. Clinton (In re Acequia, Inc.*), 34 F.3d 800, 805-806 (9th Cir. 1994); *Grochocinski v. Knippen (In re Knippen)*, 355 B.R. 710, 722 (Bankr. N.D. Ill. 2006).

The Ninth Circuit has identified the most common circumstantial indicia of fraudulent intent at the time of the transfer as: "(1) actual or threatened litigation against the debtor; (2) a purported transfer of all or substantially all of the debtor's property; (3) insolvency or other unmanageable indebtedness on the part of the debtor; (4) a special relationship between the debtor and the transferee; and, after the transfer, (5) retention by the debtor of the property involved in the putative transfer."  *Acequia*, 34 F.3d at 806.  "The presence of a single badge of fraud may spur mere suspicion; the confluence of several can constitute conclusive evidence of actual intent to defraud, absent 'significantly clear' evidence of a legitimate supervening purpose."  *Id.*  Fraudulent intent is most commonly inferred "when an insolvent debtor makes a transfer and gets nothing or very little in return." *Kupetz v. Wolf,* 845 F.2d 842, 846 (9th Cir. 1988).

Section 544(b) allows a trustee to avoid any transfer of debtor's property that would be avoidable by an unsecured creditor under applicable state law.  11 U.S.C. § 544(b).  Section 3439.04(a)(1) of the California Civil Code defines a transfer as fraudulent if the debtor made the transfer or incurred the obligation with actual intent to hinder, delay, or defraud any creditor of the debtor.  *Cal. Civ. Code* § 3439.04(a)(1).

Under § 3439.04(b) the following factors that may be considered to determine actual intent set forth under § 3439.04(a)(1):

> (1) Whether the transfer or obligation was to an insider.
> (2) Whether the debtor retained possession or control of the property transferred after the transfer.
> (3) Whether the transfer or obligation was disclosed or concealed.
> (4) Whether before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit.
> (5) Whether the transfer was of substantially all the debtor's assets.
> (6) Whether the debtor absconded.
> (7) Whether the debtor removed or concealed assets.
> (8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred.
> (9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

(10)    Whether the transfer occurred shortly before or shortly after a
substantial debt was incurred.

(11)    Whether the debtor transferred the essential assets of the business
to a lienholder who transferred the assets to an insider of the debtor.

*Cal. Civ. Code* § 3439.04(b)(1).

### 1. Initial Transferee/Conduit

Defendant alleges that no transfer actually occurred with respect to the transfers in Chart A because Defendant only served as a conduit. The Ninth Circuit uses the dominion test to determine whether a party is an initial transferee or a mere conduit. *Universal Serv. Admin. Co. v. Post-Confirmation Comm. (In re Incomnet, Inc.)*, 463 F.3d 1064, 1069 (9th Cir. 2006); *In re Bullion Reserve of North America*, 922 F.2d 544, 549 (9th Cir. 1991); *Walsh v. Townsquare Assocs. (In re Montross)*, 209 B.R. 943, 948 (9th Cir. B.A.P. 1997); *Schoenmann v. BCCI Constr. Co. (In re NorthPoint Communs. Group, Inc.)*, 2007 Bankr. LEXIS 4931, 10 (9th Cir. B.A.P. Nov. 7, 2007).

"The dominion test focuses on whether the recipient of funds has legal title to them and the ability to use them as he sees fit." *Incomnet*, 463 F.3d at 1071; *NorthPoint*, 2007 Bankr. LEXIS 4931, 12 n.9. The dominion test defines a transferee as one who has "dominion over the money or other asset, the right to put the money to one's own purposes." *Incomnet*, 463 F.3d at 1070; *NorthPoint*, 2007 Bankr. LEXIS 4931, 11. "The focus on 'dominion' is useful for those unusual situations in which legal title to funds and the right to put those funds to use have been separated. There are two primary cases when this may occur: (1) when an entity has legal title as a formal matter, but legally does not have any discretion in the application of funds; and (2) when an entity does not possess legal title, but nevertheless has sufficient authority over the funds to direct their disbursement." *Incomnet*, 463 F.3d at 1073-74. An entity without dominion or control is deemed a "conduit" which is merely a facilitator without sufficient control over the funds passing through its hands to be considered a transferee. *Montross*, 209 B.R. at 948.

In determining whether an entity has dominion over the funds courts have focused on whether the entity has a legal obligation with respect to the funds and whether it received the funds without any restrictions. *See Incomnet*, 463 F.3d at 1075; *NorthPoint*, 2007 Bankr. LEXIS at 13-14. Courts have also examined whether the entity is aware of the funds. *See In re Reeves*, 65 F.3d 670, 677 (8th Cir. 1995) (corporation did not have dominion over funds where corporation was unaware of transfer);

*Montross*, 209 B.R. at 949 (court found that Townsquare was not a transferee where funds were being laundered by one partner, and the funds were never used by Townsquare and none of the other partners where aware of the existence of the funds).

Other circuits, outside of the Ninth Circuit have adopted the more lenient "control" test, where the entire transaction is viewed as a whole to determine who truly had control of the money. *Incomnet*, 463 F.3d at 1070. In *Chase & Sanborn Corp.*, the Eleventh Circuit stated that under the control test, courts must step back and evaluate a transaction in its entirety to make sure that their conclusions are logical and equitable. *Nordberg v. Societe Generale (In re Chase & Sanborn Corp.)*, 848 F.2d 1196, 1197-98 (11th Cir. 1988). In comparing the two tests, "[t]he dominion test focuses on whether the recipient of funds has legal title to them and the ability to use them as he sees fit," whereas "[t]he control test takes a more gestalt view of the entire transaction to determine who, in reality, controlled the funds in question." *Incomnet*, 463 F.3d at 1077 (internal citations omitted).

Here, with respect to transfers 13-18, Plaintiff has presented evidence that funds were transferred from Aviat[3] to Defendant [Rosenfeld Dec. Exhibits 21 and 22; Bransten Dec. Exhibits 2, 4, 14, and 17].[4] While the parties dispute the characterization of the transfer (short term loan v. distribution), neither party has provided evidence whether Defendant had a legal, contractual, or any other obligation to use the funds, or otherwise received the funds with any restrictions. *See Leonard v. Coolidge (In re Nat'l Audit Def. Network)*, 367 B.R. 207, 227-228 (Bankr. D. Nev. 2007). Additionally, the Court notes that the evidence indicates that Defendant may have been the entity behind the transfers (as the managing partner of Prestige and Aviat) and as such, an inference can be drawn that Defendant had the ability to use the funds as it saw fit (whether it was holding legal title to the funds, or causing the funds to be transferred between the Debtors). Drawing all inferences in a light most favorable to the non-moving party, the Court finds a material issue of fact exists as to whether Defendant could use the funds as it

---

[3] The Court does not make any determination or finding whether Prestige or Aviat was the transferor.
[4] Defendant does not contest that Aviat transferred these funds to Defendant, but alleges that these funds only touched Defendant's bank account briefly, and were subsequently transferred by Defendant on the same date they were received.

saw fit, and thus, under the dominion test, whether it was an initial transferee with respect to the transfers in Chart A.

## 2. Fraudulent Intent

Defendant alleges that Plaintiff cannot establish evidence of fraud. Specifically, that Plaintiff cannot prove that each transfer was made with the "actual intent to hinder, delay, or defraud." 11 U.S.C. § 548(a)(1)(A); *Cal Civ. Code* §3439.04(a)(1).

Here, Trustee has presented a series of e-mails by and between Larry Day and Ken Ogren,[5] and a Memo by Ken Ogren, which was provided in connection with the depositions of Ken Ogren and Larry Day. In the e-mails, Mr. Ogren asks Mr. Day for an explanation of certain transfers and Mr. Day responded that Empire Land was having "serious equity and liquidity issues", which was "jeopardizing its ability to meet various financial covenants found within some of its loans." [Bransten Dec. Exhibits 22 and 23]. To offset these issues, "Empire Land (through its managing member – Empire Partners, Inc.) did seek to have various inter-company debt obligations owed by Empire Land, contributed to Empire Land, as additional capital." [Bransten Dec. Exhibits 22 and 23].

On one hand, there is no evidence of actual or threatened litigation against the debtor, or that Prestige or Aviat retained possession or control of the funds. On the other hand, Plaintiff argues he has provided evidence regarding Aviat's insolvency [*see* Haegle Report re: insolvency of Prestige and ERC, which Aviat owns 100% of these partnerships] and of a special relationship between Aviat and Defendant (Defendant was Aviat's general partner). Additionally, it appears that these transfers all occurred shortly before a substantial debt was incurred. By drawing all logical inferences in favor of Plaintiff, the Court finds that Plaintiff has produced sufficient evidence, with respect to the badges of fraud, to raise a disputed fact as to intent to hinder delay and defraud creditors as to the transfers in Chart A.

///

---

[5] Larry Day was the Executive Vice President & Chief Legal Officer, and Secretary of Defendant [Answer filed 4/6/12, Dk. 105, Adv. No. 6:10-ap-01319]. Ken Ogren worked for Lipsey, Yougren, Means, Ogren & Sandberg, LLP, who were employed by Debtors to serve as tax accountants [Order Granting Application to Employ Lipsey, Yougren, Means, Ogren & Sandberg, LLP entered on 8/12/2008, Dk. 305, Case No. 6:08-bk-14592].

B. <u>Fraudulent Transfers (Constructive Fraud) § 548(a)(1)(B), § 544 and Cal. Civ. Code § 3439, and § 550</u>

| Chart B: Constructive Fraud Transfers | | | | |
|---|---|---|---|---|
| Defendant's Transfer # | Date of Transfer | Amount of Transfer | Transferring Debtor | Second Amended Complaint Claim |
| **71** | 4/4/2007 | $666,666.66 | Empire Land | 5, 6 |
| **73** | 1/9/2007 | $409,903.53 | ERC | 9, 10 |
| **74** | 2/7/2007 | $753,991.60 | ERC | 9, 10 |
| **76** | 3/2/2007 | $376,995.80 | ERC | 9, 10 |
| **77** | 3/22/2007 | $396,572.64 | ERC | 9, 10 |
| **78** | 4/4/2007 | $376,995.80 | ERC | 9, 10 |
| **84** | 1/17/2007 | $100,000.00 | Prestige | 11, 12 |
| **85** | 1/25/2007 | $300,000.00 | Prestige | 11, 12 |
| **86** | 2/2/2007 | $50,000.00 | Prestige | 11, 12 |
| **87** | 2/2/2007 | $200,000.00 | Prestige-North[6] | 13, 14 |
| **88** | 3/6/2007 | $115,421.13 | Prestige | 11, 12 |
| **90** | 4/4/2007 | $138,473.71 | Prestige | 11, 12 |
| **93** | 1/11/2007 | $250,000.00 | Prestige-North | 13, 14 |
| **94** | 3/3/2007 | $72,986.93 | Prestige-North | 13, 14 |
| **96** | 4/4/2007 | $18,960.79 | Prestige-North | 13, 14 |

---

[6] Prestige-North was not a separate legal entity from Prestige, but a sub account for accounting and management purposes. Rosenfeld Dec., Exhibit 44.

Section 548(a)(1) of the Bankruptcy Code provides in pertinent part that the trustee may avoid any transfer of an interest of the debtor in property that was made on or within two years before date of the filing of the petition, if the debtor (B)(i) received less than a reasonably equivalent value in exchange for such transfer; and (ii)(I) was insolvent on the date that such transfer was made or became insolvent as a result of such transfer.  11 U.S.C. § 548(a)(1)(B)(i) and (ii)(I).

Section 544(b) allows a trustee to avoid any transfer of debtor's property that would be avoidable by an unsecured creditor under applicable state law.  11 U.S.C. § 544(b).  A transfer is avoidable as constructively fraudulent "if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation." *Cal. Civ. Code* § 3439.05.  Under § 3439.02, a debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets, or if the debtor is not paying his or her debts as they become due. *Cal. Civ. Code* § 3439.02.  Thus, to prove that the transfers were constructively fraudulent under California law, the trustee must establish that: 1) transfers of debtor's property occurred; 2) debtor did not receive reasonably equivalent value in exchange; and 3) at the time of the transfers, debtor was insolvent, was made insolvent by the transaction, was operating or about to operate without property constituting reasonably sufficient capital, or was unable to pay debts as they become due. *See Decker v. Antovich (In re Antovich Constr., Inc.)*, 2008 Bankr. LEXIS 1307, 7-8 (Bankr. N.D. Cal. Apr. 11, 2008).

**1. Transfer of Debtor's Interest**

Defendant alleges with respect to transfers 86, 93 and 94, that Plaintiff cannot prove that these funds were transferred to Defendant.  Section 101(54)(D) defines transfer as each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with-- (i) property; or (ii) an interest in property.  11 U.S.C. § 101(54)(D).  The term transfer under Section 101(54) is to be broadly construed. *Morrissy v. Dereve (In re Dereve)*, 381 B.R. 309, 326 (Bankr. N.D. Fla. 2007).  Transfer under § 101(54) includes a withdrawal from a bank account. *In re Bernard*, 96 F.3d 1279 (9th Cir. 1996) (debtor's withdrawal of cash from a bank account constituted a transfer because the debtor parted with a claim against the bank in exchange for the cash); *Haag v. Northwestern Bank (In re Haag)*, 2014 U.S. App. LEXIS 16030 (9th Cir. Aug. 20, 2014).  "Within the context of a fraudulent transfer, the

definition of transfer is sufficiently broad to include a transfer that results in a **modification of form** or value of property transferred or a deposit into or withdrawal from a bank account." *Towers v. United States, Dep't of Treasury, IRS (In re Feiler)*, 218 B.R. 957, 960 (Bankr. N.D. Cal. 1998) **(emphasis added)**. S*ee Bernard*, 96 F.3d at 1283; *In re Richmond Produce Co., Inc*., 151 B.R. 1012, 1021 (Bankr. N.D. Cal. 1993); *2-101 Collier on Bankruptcy P* 101.54 (16th ed. 2015).

"Money deposited in a debtor's bank account, over which the debtor exercises control, is property of the debtor.  By contrast, property held in trust for another does not become property of the estate. The burden of establishing a trust relationship lies with the claimant when property of the estate is alleged to be held in trust." *Easyriders, Inc. v. Bayview Commer. Leasing (In re Easyriders, Inc.)*, 2006 Bankr. LEXIS 2445, 18 (Bankr. C.D. Cal. May 18, 2006) (internal citations omitted).

Defendant alleges that Plaintiff has not produced evidence that Prestige transferred $50,000 to Defendant on February 2, 2007 (transfer 86).  Here, Plaintiff provides Prestige's bank statement, which reflects a withdrawal of $50,000 on February 2, 2007, and Defendant's February bank statement, which reflects a deposit of $50,000 on February 2, 2007 [*See* Bransten Dec. Exhibits 9 and 11].  Accordingly, the Court finds that Plaintiff has set forth sufficient evidence to create a disputed fact as to whether Prestige transferred $50,000 to Defendant (transfer 86).

Defendant alleges that with respect to transfers 93 and 94, that Plaintiff cannot prove that there was a transfer from Prestige-North, to Defendant.  Here, Plaintiff has presented evidence that Prestige issued check #10311 in the amount of $250,000, which was deducted from Prestige's bank account on January 16, 2007, and check #103513 in the amount of $72,986.93, which was deducted from Prestige's bank account on March 8, 2007 [Bransten Dec. Exhibit 10].  Both checks identified Defendant as the payee [Id.].  Plaintiff has also presented evidence that on January 11, 2007, and March 7, 2007, Defendant deposited $265,839.33, and $108,406.93 respectively into its bank account [Bransten Dec. Exhibit 11].  Plaintiff alleges that the $265,839.33 deposit includes the $250,000 check along with another check in the amount of $833.33 from Prestige, and two other checks in the amounts of $6.00 and $15,000, and that the $108,406.93 deposit includes the $72,986.93 check along with another check from another entity in the amount of $35,417.00.  Here, based on the evidence provided, an inference may be made that the $250,000 was included in the January 11, 2007, deposit given that check #10311 was

1    addressed to Defendant.  Similarly, the Court may draw the inference that Defendant deposited check #

2    103513, as the check was addressed to Defendant, and the general ledger Plaintiff provides appears to

3    corroborate such deposit [Bransten Dec. Exhibit 17].  Accordingly, the Court finds that Plaintiff has set

4    forth sufficient evidence to create a disputed fact whether Prestige transferred $250,000 (transfer 93) and

5    $72,986.93 (transfer 94) to Defendant.

6        **2.  Insolvency**

7        Defendant argues that Plaintiff cannot meet his burden in proving that Debtors were insolvent at

8    the time of the transfers in Chart B.  Plaintiff relies on the expert reports of William Haegele ("Haegele

9    Report") and Timothy Sullivan ("Sullivan Report") to establish debtors' (Empire Land, ERC, and

10    Prestige) insolvency.  Defendant argues that Plaintiff cannot use the Haegele Report to establish

11    insolvency because it is not credible or reliable.  Specifically, Defendant argues that the Haegele Report,

12    if considered, is insufficient to establish the Debtors' insolvency because: (1) the report does not provide

13    an opinion of the consolidated Debtors insolvency; (2) the report does not establish the consolidated

14    Debtors insolvency as of the date of the transfers; and (3) the report improperly relies on third party

15    appraisals.

16            *i.    Substantive Consolidation*

17        Defendant alleges that the Haegele Report is not credible or reliable because it does not provide

18    an opinion as to the substantively consolidated Debtors.  Additionally, Defendant argues that because

19    insolvency should be examined on a consolidated basis, Plaintiff may not double count the Wachovia

20    debt in an insolvency analysis by allocating all of the debt to both Prestige and ERC.

21        To the extent Defendant's argument is premised on the fact that by operation of law the

22    Consolidation Order requires Plaintiff to prove Debtors' insolvency on a substantively consolidated

23    basis; the Court is unpersuaded by such argument as Defendant has not provided any legal authority to

24    support such position.  Moreover, as set forth in further detail below, the Court does not believe that the

25    findings of fact and conclusions of law for the Consolidation Order require this Court to examine

26    insolvency on a consolidated basis.

27        Defendant argues that the findings of fact and conclusions of law issued in connection with the

28    Consolidation Order require this Court to examine the Debtors' insolvency on a consolidated basis.

Plaintiff cites to *Total Technical* to support his argument that insolvency should be examined on an entity by entity basis. *Total Technical Servs., Inc. v. Whitworth*, 150 B.R. 893 (Bankr. D. Del. 1993). In *Total Technical*, even though the two debtors were substantively consolidated, the court determined that it would examine only the insolvency of the debtor who made the alleged preferential transfers. *Id.* at 899-900. In reaching this conclusion, the court noted that the order substantively consolidating the debtors did not have any findings that the debtors were treated on a consolidated basis **during the period in question** (i.e. the time in which the transfers at issue were made). *Id.* at 900 (citing *Cissell v. First Nat'l Bank*, 476 F. Supp. 474, 479 (S.D. Ohio 1979) (court found that the parties had treated the debtors as a consolidated unit **during the period in question**, and thus examined the insolvency of the debtors on a consolidated basis)) (**emphasis added**).

Here, while the findings of fact for the Consolidation Order made piecemeal findings as to the close relationship of the Debtors pre-petition, there is no specific finding as to any date by which the Debtors were deemed treated as "consolidated" until the Petition Date, which was subsequent to the transfers. Thus, the Court finds that neither party has established whether insolvency should be examined on an individual or consolidated basis, because neither party has provided evidence whether Debtors were "consolidated" during the time of the transfers.

Last, the Court is unpersuaded by Defendant's argument that Plaintiff is estopped from asserting that insolvency should be examined on an individual basis because such position contravenes Plaintiff's arguments made in support of the Consolidation Order and the findings of fact and conclusions of law issued therewith.[7] Specifically, after review of Plaintiff's Motion for Substantive Consolidation,[8] the transcript of the hearing,[9] and the findings of fact and conclusions of law for the Consolidation Order,[10] Defendant has not established that Plaintiff took a specific position as to whether debtors were

---

[7] The Court notes that Defendant opposed Plaintiff's Motion for Substantive Consolidation on the basis that it did not want Plaintiff to be able to use issue preclusion to the findings of facts in a future adversary proceeding [See Response and Request to be heard Regarding Trustee's Motion for Order Substantively Consolidating Debtors' Estate, Dk. 762, Case No.: 6:08-bk-14592-MJ]. Thus, the Court finds it disingenuous that Defendant is essentially trying to assert issue preclusion (Plaintiff has specifically asserted an estoppel argument) to bind Plaintiff to the findings of fact for the Consolidation Order.
[8] Filed 8/13/2009, Dk. 748 in Case No.: 6:08-bk-14592-MJ.
[9] *See* Dk. 801 in Case No.: 6:08-bk-14592-MJ.
[10] Defendant's RJN, Exhibit B.

1  sufficiently "consolidated" at the specific time of the transfers.  For example, while the findings of fact

2  for the Consolidation Order state that, among other things, "[c]reditors dealt with the Debtors as a single

3  economic unit",[11] as set forth above, the findings of fact do not specify a time period that the creditors

4  dealt with the Debtors as a single economic unit.  Accordingly, Defendant has not shown that Plaintiff

5  took an inconsistent position to (1) Plaintiff's arguments in support of the Motion for Substantive

6  Consolidation, or (2) the findings of fact and conclusions of law set forth in connection with the

7  Consolidation Order.  Moreover, the Court notes that Defendant has not cited to any legal authority in

8  support of its estoppel argument.

9      In connection with Defendant's argument that insolvency must be examined on consolidated

10  basis, Defendant objects to Plaintiff double counting the Wachovia debt in the Haegele Report Plaintiff

11  alleges that Prestige and ERC were co-obligors under the Wachovia debt, and thus, each entity was

12  100% liable for this debt.  As set forth above, the Court is not persuaded that Plaintiff must establish

13  insolvency on a consolidated basis.  Thus, at this time, and without deciding whether the Wachovia debt

14  may be allocated to both Prestige and ERC in an insolvency analysis, the Court finds Plaintiff may

15  present evidence regarding Prestige and ERC's insolvency that assigns all of the Wachovia debt to both

16  debtors.

17      Based on the foregoing, and adopting for purposes of only this Motion the *Total Technical*

18  approach, the Court finds a material question of fact exists as to whether insolvency should be

19  determined on a consolidated basis.

20          ii.     *Insolvency at the Time of the Transfers*

21      Defendant argues that the Haegele Report does not provide evidence of insolvency as of the

22  dates the alleged transfers.  Here, the Haegele Report opines that Empire Land was insolvent by

23  December 31, 2006, and that it did not become solvent on any date during the period of December 31,

24  2006, through the Petition Date [Haegele Dec. and Bransten Dec. Exhibit 18: Haegele Report page 7].

25  As transfer 71 was from Empire Land to Defendant on April 4, 2007, the Court finds that Plaintiff has

26

27  ───────────────
[11] *See* Defendant's RJN Exhibit C, Consolidation Order, page 10, lines 23-24.

28

1    identified sufficient evidence to create a disputed fact as to Empire Land's insolvency on the date of

2    transfer 71.

3        The Haegele Report opines that Prestige was insolvent by March 31, 2007 and June 30, 2007,

4    and that it did not become solvent on any date during the period of June 30, 2007, 2007 through the

5    Petition Date [Bransten Dec. Exhibit 18: Haegele Report page 5].  Additionally, the Court notes that the

6    Haegele Report states that Prestige was insolvent as of December 31, 2006, if all of the Wachovia debt

7    was allocated to Prestige [Bransten Dec. Exhibit 18: Haegele Report page 25].[12]  As transfers 84-88, 90,

8    93, 94, and 96 were from Prestige to Defendant from January 11, 2007, to April 4, 2007, the Court finds

9    that Plaintiff has identified sufficient evidence to create a disputed fact as to Prestige's insolvency on the

10    date of transfers 84-88, 90, 93, 94, and 96.

11        Trustee alleges that Prestige and ERC were jointly and severally liable for the Wachovia debt

12    (approximately $106.9 million), and the Haegele Report opines that if all of the Wachovia debt was

13    allocated to ERC, then ERC was insolvent as of December 31, 2006 [Bransten Dec. Exhibit 18: Haegele

14    Report page 38].[13]  As transfers 73, 74, 76, 77, and 78 were from ERC to Defendant from January 9,

15    2007, to April 4, 2007, the Court finds that Plaintiff has identified sufficient evidence to create a

16    disputed fact as to ERC's insolvency on the date of transfers 73, 74, 76, 77, and 78.

17            *iii.    Third Party Appraisals/Credibility*

18        Defendant alleges that the Haegele Report is inadmissible because Haegele did not rely on actual

19    sale values.[14]  However, the Court notes that Defendant does not provide any evidence to challenge or

20    controvert the Haegele Report.  Thus, Defendant's arguments regarding the credibility of the Haegele

21    Report ask the Court to weigh the credibility and attack the methodology of the Haegele Report, without

22

23

24    [12] As set forth above, the Court does not make any finding or determination regarding the allocation of the Wachovia debt
      with respect to Prestige or ERC.

25    [13] As set forth above, the Court does not make any finding or determination regarding the allocation of the Wachovia debt
      with respect to Prestige or ERC.

26    [14] Defendant's argument on this issue alleges "the Haegele Report appears to reach its conclusions on insolvency by taking
      contemporaneous third-party appraisals and reducing the valuations given by those appraisals..." Motion, page 12, lines 5-
27    22.  However, it does not appear that the Haegele Report reduces values by third-party appraisals, but relies on the Sullivan
      Report regarding the value of certain real property.

28

1   any contradictory evidence.[15]  Thus, the Court finds Defendant's arguments alone, without any

2   supporting evidence, are insufficient to exclude the Haegele Report at this stage.

3          **3.  Reasonably Equivalent Value**

4          Defendant argues that Plaintiff has not provided an expert opinion on the issue of "reasonably

5   equivalent value," and to the extent the Court is inclined to rely on Plaintiff's interrogatory responses,

6   they are insufficient to establish that Debtors received less than reasonably equivalent value in exchange

7   for the alleged transfers.

8          Whether or not reasonably equivalent value was provided in exchange for a transfer is a question

9   of fact.  *Devon Mobile Communs. Liquidating Trust v. Adelphia Communs. Corp. (In re Adelphia*

10  *Communs. Corp.)*, 2006 Bankr. LEXIS 4600, 38-39 (Bankr. S.D.N.Y. Mar. 6, 2006).  "It is far from

11  established that the direct satisfaction of antecedent debt is the only way of ascertaining reasonably

12  equivalent value, however.  In determining value, the Court makes a two-fold inquiry: whether the

13  debtor received any value at all in exchange for the transfer; i.e. any realizable commercial value as a

14  result of the transaction, and whether that value was in fact reasonably equivalent to the cash transferred

15  by the debtor."  *Id.*

16         Plaintiff alleges that the corporate overhead allocations were arbitrary and capricious and that

17  Defendant has failed provide Plaintiff with a sufficient explanation regarding how the corporate

18  overhead fees were calculated, and exactly what Defendant provided in return for the fees.[16]

19         Here, Plaintiff has presented the deposition of Larry Miller where Mr. Miller describes how the

20  corporate overhead payments were allocated for 2007 [Bransten Dec. Exhibit 28].[17]  In the deposition,

21  Mr. Miller indicates that the corporate overhead allocation percentages for 2007 were set in 2006, by

22  examining the complexity and activity of the businesses to determine the requisite level of effort and

---

[15] The Court is not making any findings regarding the methodology used by Haegele (whether to consider the actual sale price of Anaverde); only that Plaintiff has presented sufficient evidence to create an issue for trial.
[16] While Plaintiff's SGI does not specifically identify evidence regarding reasonably equivalent value with respect to the transfers in Chart B, the Court notes that the record contains the following evidence: Rosenfeld Dec. Exhibit 44, and Bransten Dec. Exhibits 12-14, and 28.
[17] Larry Miller was the Executive Vice President and Chief Financial Officer of Defendant [Answer filed 4/6/12, Dk. 105, Adv. No. 6:10-ap-01319].

1  resources required to manage those businesses [Id.].  The Court finds it is unclear, based on Mr. Miller's

2  testimony, whether the estimated allocations were subsequently reevaluated to match the necessary and

3  actual resources required to manage the respective businesses.[18]  While there is some evidence that there

4  may have been a quarterly reconciliation of the overhead allocations, neither party has presented any

5  evidence that the alleged reconciliations were actually performed, or that such reconciliations resulted in

6  each debtor, or the consolidated Debtors,[19] paying only for the benefit it received from Defendant.

7       The Court notes that the monthly overhead fee was the exact same for a debtor for several

8  months [Rosenfeld Dec. Exhibit 44, and Bransten Dec. Exhibit 12-14].  Exhibit 44 attached to the

9  Rosenfeld Dec. are Defendant's Amended Responses to Trustee's First Set of Interrogatories, which

10  reference equal monthly payments to Defendant (pages 472-524).  Exhibits 12-14 attached to the

11  Bransten Dec. are Empire Land, ERC, and Aviat's post-petition MOR's,[20] which also reference equal

12  monthly payments of corporate level services and management fees.  This by itself appears unlikely,

13  given testimony of fluctuation in the amount of corporate overhead actually provided to each debtor.

14       Similarly, there is evidence that the each debtor was assigned a percentage of the corporate

15  overhead fees as follows 15% to Empire Land, 35% to Aviat and 35% to ERC [Bransten Dec. Exhibits

16  12, 13, 14, and 28], and there is also evidence that the monthly amount paid to Defendant from debtors

17  remained the same for each month [Rosenfeld Dec. Exhibit 44, and Bransten Dec. Exhibit 12-14].  If

18  each debtor were only paying a percentage of the work Defendant performed [*see* Bransten Dec. Exhibit

19  28], while the percentage allocated to each debtor remained the same, the monthly fee debtors paid

20  Defendant should fluctuate based on the actual work Defendant provided.  Thus, the Court finds it

21  unlikely and unrealistic that the percentage allocations would yield equal monthly fees for a debtor.

22       Finally as set forth above and in Section IV. D. 2 (Antecedent Debt), it is unclear from the record

23  exactly what work Defendant performed for such fees.  As such, the Court finds that Plaintiff has

24  presented sufficient evidence for the Court to draw the inference that neither debtors (Empire Land,

---

[18] When asked if he ever revised the allocations in the course of the year, Mr. Miller responded he could not recall.
[19] The Court is not making any finding at this time whether reasonably equivalent value should be analyzed on an individual or consolidated basis.
[20] While the amounts in the MOR's are post-petition they appear to corroborate Defendant's discovery responses.

ERC and Prestige), nor consolidated Debtors, received reasonably equivalent value. Thus, as different ultimate inferences may be drawn from the evidence provided, the Court finds that granting summary judgment is inappropriate.

Accordingly, there is a disputed fact as to whether debtors (Empire Land, ERC, and Prestige), or the consolidated Debtors, received reasonably equivalent value for the transfers set forth in Chart B.

C. Preferential Transfers § 547 and § 550

| Chart C: Preference Transfers | | | | |
|---|---|---|---|---|
| Defendant's Transfer # | Date of Transfer | Amount of Transfer | Transferring Debtor | Second Amended Complaint Claim |
| 5 | 6/21/2007 | $94,708.60 | Empire Land | 1 |
| 6 | 6/21/2007 | $18,727.40 | Empire Land | 1 |
| 9 | 7/31/2007 | $17,455.23 | Empire Land | 1 |
| 11 | 12/3/2007 | $12,723.40 | Empire Land | 1 |
| 24 | 7/26/2007 | $15,000.00 | ERC | 2 |
| 25 | 8/15/2007 | $5,542.65 | ERC | 2 |
| 33 | 1/25/2008 | $4,906.96 | ERC | 2 |
| 34 | 3/7/2008 | $7,210.92 | ERC | 2 |
| 40 | 7/31/2007 | $4,950.65 | Prestige | 3 |
| 41 | 7/31/2007 | $5,302.84 | Prestige | 3 |
| 47 | 11/27/2007 | $18,867.13 | Prestige | 3 |
| 48 | 11/28/2007 | $5,192.57 | Prestige | 3 |
| 50 | 1/4/2008 | $22,061.67 | Prestige | 3 |
| 59 | 4/23/2008 | $212,249.61 | Prestige | 3 |

In general, 11 U.S.C. § 547(b) permits a trustee to avoid various preferential transfers of a debtor's interests in property made prior to the commencement of a bankruptcy case. *Begier v. United States I.R.S.,* 496 U.S. 53, 58 (1990). Equality of distribution among creditors is a central policy of the Bankruptcy Code. *Id.* at 58. According to that policy, creditors of equal priority should receive pro rata shares of the debtor's property. *Id.* Section 547(b) furthers this policy by permitting a trustee in bankruptcy to avoid certain preferential payments made before the debtor files for bankruptcy. *Id.* This mechanism prevents the debtor from favoring one creditor over others by transferring property shortly before filing for bankruptcy. *Id.*

Specifically, § 547(b) permits a trustee to avoid any (1) transfer of the debtor's interest in property; (2) to or for a creditor's benefit; (3) on account of an antecedent debt; (4) within 90 days prior to filing of the petition (or within one year if the transferee was an "insider"); (5) made while the debtor was insolvent; (7) that prefers the creditor receiving the transfer. *Begier*, 496 U.S. at 53. The trustee has the burden of proving the avoidability of a transfer under § 547(b). 11 U.S.C. § 547(g).

### 1. Transfer Occurred[21]

Defendant alleges that Plaintiff has not provided sufficient evidence that $5,542.65 (transfer 25) was transferred to Defendant. Here, Plaintiff has presented ERC's August 2007 bank statement, which reflects that check # 117527 in the amount of $5,542.65 was paid on 8/16/2007, and ERC's general ledger, which reflects a credit to Empire Partners Inc. on 8/1/2007 in the amount of $5,542.65. Thus, an inference may be drawn that check #117527 in the amount of $5,542.65 was deposited by Defendant as set forth in ERC's general ledger. Accordingly, the Court finds that Plaintiff has identified sufficient evidence to establish a material question of fact as to whether Defendant received transfer 25, in the amount of $5,542.65.

///

///

---

[21] Defendant's PSUF also contest whether transfer 40 occurred, which the First Amended Complaint asserted in the amount of $4,950.85. However, Plaintiff's Second Amended Complaint asserts transfer 40 in the amount of $4,950.65, and Defendant concedes that a transfer in the amount of $4,950.65 took place on 7/31/2007 from Prestige to Defendant [See PSUF #51].

### 2. Initial Transferee/Conduit

Defendant alleges that it was only a conduit with respect to transfers 33 and 34 as the funds received from ERC were used to pay credit card expenses on behalf of ERC, because ERC did not have its own bank credit card [PSUF #242 and #253]. Here, Plaintiff has presented evidence, and Defendant does not contest, that ERC transferred $4,906.96 (transfer 33) and $7,210.92 (transfer 34) to Defendant. Defendant alleges that the transfers were for reimbursement of credit card charges that Defendant made on its credit card on behalf of ERC. *See* discussion *supra* regarding Initial Transferee/Conduit in Section IV, A, 1.

Even assuming Defendant's assertions are true, the Court notes that Defendant has not provided any evidence that it was obligated or otherwise under any requirement or restriction regarding the $4,906.96 or $7,210.92, to pay for the alleged credit card charges. *See Leonard v. Coolidge (In re Nat'l Audit Def. Network)*, 367 B.R. 207, 227-228 (Bankr. D. Nev. 2007). Thus, in the absence of such evidence, and drawing all logical inferences in favor of Plaintiff, the Court finds that there is a disputed fact as to whether Defendant was an initial transferee with respect to transfers 33 and 34.

### 3. Insolvency

Defendant argues that Plaintiff cannot meet his burden in proving that Debtors were insolvent at the time of the alleged transfers. Plaintiff relies on the expert reports of William Haegele ("Haegele") and Timothy Sullivan ("Sullivan") to establish debtors' (Empire Land, ERC, and Prestige) insolvency. The Court finds Defendant's argument unpersuasive. *See* discussion *supra* regarding Insolvency in Section IV, B, 2. Additionally, transfers 34 and 59 were made during the 90 days immediately preceding the Petition Date, and as such insolvency is presumed. 11 U.S.C. § 547(f). For the reasons set forth above, the Court finds that Plaintiff has identified sufficient evidence to create a disputed fact as to debtors' (Empire Land, ERC, and Prestige) insolvency with respect to transfers in Chart C.

### 4. Creditor Received More By Virtue of the Alleged Preference Than It Would Have in a Chapter 7 Liquidation

Defendant alleges that Plaintiff has failed to set forth sufficient evidence to establish that Defendant received more than it would have in a chapter 7 liquidation. Whether a particular transfer is preferential should be determined "not by what the situation would have been if the debtor's assets had

been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results." *Palmer Clay Products,* 297 U.S. 227, 229 (U.S. 1936); *In re Lewis W. Shurtleff, Inc.*, 778 F.2d 1416, 1421-1423 (9th Cir. 1985). The net result is that, **as long as the distribution in bankruptcy is less than one-hundred percent, any payment "on account" to an unsecured creditor during the preference period will enable that creditor to receive more than he would have received in liquidation had the payment not been made**. *Shurtleff*, 778 F.2d 1421-1423 (**emphasis added**).

Here, Plaintiff has identified the claims register in case no. 6:08-bk-14592-MJ [Plaintiff's RJN Exhibit 15], and Defendant's proofs of claims filed against each debtor [Plaintiff's RJN Exhibits 16-19]. Plaintiff alleges that the administrative, priority and unsecured claims exceed Debtors' substantively consolidated assets.[22] The Court notes that Debtors' assets as reflected on Debtors' schedules are valued at approximately $71,850,026.42 [Plaintiff's RJN Exhibits 4-11], and the claims register reflects claims in the amount of $552,700,675.03 [Plaintiff's RJN Exhibit 15]. Thus, as Debtors' consolidated liabilities appear to be seven times greater than Debtors' consolidated assets, the Court draws the inference that Debtors' general unsecured claims will not be paid 100%.[23] Defendant filed four general unsecured claims in Debtors' cases, which total approximately $2,373,891.16. As it appears general unsecured claimants, which include Defendant, will not be paid 100%, the Court finds that Plaintiff has identified sufficient evidence that there is a disputed fact whether that transfers in Chart C enabled Defendant to receive more than it would in a chapter 7 liquidation. 11 U.S.C. § 547(b)(5); *Long v. Joe Romania Chevrolet (In re Loken)*, 175 B.R. 56, 60 (9th Cir. B.A.P. 1994).

///

///

///

---

[22] Plaintiff alleges that the chapter 7 liquidation analysis is done on a consolidated basis v. an entity by entity basis, and Defendant does not appear to dispute this.

[23] Even if the Court were to assume that Defendant had not received the transfers, the Debtors' consolidated liabilities appear to exceed Debtors' consolidated assets such that the Court may draw the logical inference that all of Debtors' general unsecured creditors will not receive 100%.

### 5. Ordinary Course of Business Defense

Defendant appears to allege that transfers 5, 9, 11, 41, 47, and 50 were reimbursements for business expenses incurred by Empire Land, ERC, or Prestige in the ordinary course of business.  The creditor has the burden of demonstrating that payments were made in the ordinary course of business.  *In re Healthcentral.com*, 504 F.3d 775, 790 (9th Cir. 2007).  Here, Defendant has not submitted any evidence that such transfers were made in the ordinary course of business, and as such, has failed to meet its burden.

D.  Preferential and/or Fraudulent Transfers (Constructive Fraud)

| CHART D: Preference/Constructive Fraud Transfers | | | | | |
|---|---|---|---|---|---|
| **Defendant's Transfer #** | **Date of Transfer** | **Amount of Transfer** | **Transferring Debtor** | **Nature of Claim** | **Second Amended Complaint Claim** |
| **1** | 6/11/2007 | $499,808.34 | Empire Land | Preference | 1 |
| | | | | Fraudulent Transfer | 5, 6 |
| **8** | 7/18/2007 | $236,528.99 | Empire Land | Preference | 1 |
| | | | | Fraudulent Transfer | 5, 6 |
| **21** | 5/1/2007 | $376,995.80 | ERC | Preference | 2 |
| | | | | Fraudulent Transfer | 9, 10 |
| **23** | 6/11/2007 | $376,995.80 | ERC | Preference | 2 |
| | | | | Fraudulent Transfer | 9, 10 |
| **27** | 8/16/2007 | $296,667.00 | ERC | Preference | 2 |
| | | | | Fraudulent Transfer | 9, 10 |
| **28** | 9/27/2007 | $319,830.00 | ERC | Preference | 2 |
| | | | | Fraudulent Transfer | 9, 10 |
| **31** | 11/6/2007 | $113,077.12 | ERC | Preference | 2 |
| | | | | Fraudulent Transfer | 9, 10 |
| **32** | 12/11/2007 | $338,593.57 | ERC | Preference | 2 |
| | | | | Fraudulent Transfer | 9, 10 |
| **35** | 5/1/2007 | $138,473.71 | Prestige | Preference | 3 |
| | | | | Fraudulent Transfer | 11, 12 |

| | | | | Preference | 3 |
|---|---|---|---|---|---|
| **37** | 6/11/2007 | $138,473.71 | Prestige | Fraudulent Transfer | 11, 12 |
| | | | | Preference | 3 |
| **43** | 8/17/2007 | $97,750.00 | Prestige | Fraudulent Transfer | 11, 12 |
| | | | | Preference | 3 |
| **44** | 9/27/2007 | $116,074.00 | Prestige | Fraudulent Transfer | 11, 12 |
| | | | | Preference | 3 |
| **46** | 11/6/2007 | $72,136.12 | Prestige | Fraudulent Transfer | 11, 12 |
| | | | | Preference | 3 |
| **49** | 12/11/2007 | $91,786.39 | Prestige | Fraudulent Transfer | 11, 12 |
| | | | | Preference | 3 |
| **53** | 1/29/2008 | $454,554.00 | Prestige | Fraudulent Transfer | 11, 12 |
| | | | | Preference | 3 |
| **55** | 3/6/2008 | $227,277.00 | Prestige | Fraudulent Transfer | 11, 12 |
| | | | | Preference | 3 |
| **57** | 3/25/2008 | $227,277.00 | Prestige | Fraudulent Transfer | 11, 12 |
| | | | | Preference | 3 |
| **58** | 3/27/2008 | $250,000.00 | Prestige | Fraudulent Transfer | 11, 12 |
| | | | | Preference | 4 |
| **60** | 5/1/2007 | $72,986.93 | Prestige-North | Fraudulent Transfer | 13, 14 |
| | | | | Preference | 4 |
| **61** | 6/11/2007 | $72,986.93 | Prestige-North | Fraudulent Transfer | 13, 14 |
| | | | | Preference | 4 |
| **62** | 8/16/2007 | $16,609.86 | Prestige-North | Fraudulent Transfer | 13, 14 |
| | | | | Preference | 4 |
| **63** | 9/27/2007 | $56,816.43 | Prestige-North | Fraudulent Transfer | 13, 14 |
| | | | | Preference | 4 |
| **65** | 11/6/2007 | $132,955.86 | Prestige-North | Fraudulent Transfer | 13, 14 |
| | | | | Preference | 4 |
| **67** | 1/29/2008 | $72,986.93 | Prestige-North | Fraudulent Transfer | 13, 14 |

Plaintiff has sued on the transfers listed above in Chart D, under both a preference and constructive fraud theory. Defendant alleges that a transfer cannot be both because if a transfer was

made on account of an antecedent debt, then the reduction of that debt on a dollar-for-dollar basis provided reasonably equivalent value. *See Official Comm. of Unsecured Creditors v. Hancock Park Capital II, L.P. (In re Fitness Holdings Int'l, Inc.),* 714 F.3d 1141, 1145 (9th Cir. 2013). Plaintiff argues that to the extent funds were paid on account of an antecedent debt, it is a preference, but funds not paid on behalf of an antecedent debt are being pursued under a constructive fraud theory. The Court does not accept that Trustee is entitled to a double recovery of funds under both a preference and constructive fraud theory. However, at this time the Court is only determining whether Plaintiff has provided sufficient evidence to create disputed facts to pursue these claims (preference or constructive fraud).

### 1. Creditor of the Debtor

Defendant alleges that Plaintiff cannot prove that Defendant was a creditor of the debtors (Empire Land, ERC, or Prestige) as to each of the transfers set forth in Chart D. Section 547(b)(1) requires that the transfer of assets in question must be "to or for the benefit of a creditor" in order for preference liability to attach. *In re Adamson Apparel, Inc.,* 785 F.3d 1285, 1289 (9th Cir. 2015). In relevant part, a creditor is defined in § 101(10) of the Bankruptcy Code as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." 11 U.S.C. § 101(10). A claim is further defined as a "right to payment" or a "right to an equitable remedy for breach of performance if such breach gives rise to a right to payment." 11 U.S.C. § 101(5).

Initially, the Court notes that such argument was not specifically set forth in either the Defendant's Motion or Reply, but is brought up in PSUF.[24] Additionally, Defendant's argument regarding its status as a creditor with respect to each transfer actually appears to contest whether such transfers were made on account of an antecedent debt. Specifically, Defendant argues that "[n]one of the Trustee's cited evidence establishes that the corporate overhead allocations legally bound the debtors to pay for corporate overhead services before the services were performed."

Notwithstanding the foregoing, and as more fully set forth *infra* in Section IV. D. 2 (Antecedent Debt), as to the transfers set forth in Chart D the Court finds that Plaintiff has presented sufficient

---

[24] *See* PSUF #549, 559, 569, 580, 591, 601, 611, 621, 631, 642, 653, 663, 673, 683, 693, 703, 713, 723, 734, 745, 755, 765, 775, and 784

evidence to create a disputed fact as to whether Defendant was a creditor of debtors (Empire Land, ERC, and Prestige) or the consolidated Debtors.

## 2. Antecedent Debt

While Defendant only alleges that Plaintiff cannot provide sufficient evidence that transfers 21, 23, 35, 37, 57, 58, and 60 were on account of an antecedent debt,[25] the Court will examine whether all transfers set forth in Chart D were on account of an antecedent debt as Defendant argues that Defendant was not a creditor at the time of all of the transfers set forth in Chart D.  Defendant alleges that because the payments set forth in Chart D were payments for services to be rendered to debtors, such transfers were not on account of an antecedent debt.

Whether a debt is antecedent or current depends on when it was incurred.  *In re Superior Fast Freight, Inc.*, 202 B.R. 485, 488 (9th Cir. B.A.P. 1996).  A debt is incurred when the debtor first becomes legally obligated to pay.  *In re CHG Int'l, Inc.*, 897 F.2d 1479, 1486 (9th Cir.1990); *In re Superior Fast Freight, Inc.*, 202 B.R. at 488.  In the typical credit sale or service contract, the courts generally hold that an antecedent debt owed for purposes of § 547(b)(2) arises upon delivery of goods or performance of services.  *See, In re Superior Fast Freight, Inc.*, 202 B.R. 485, 488 (9th Cir. B.A.P. 1996); *U.S. Trustee v. First Jersey Securities, Inc. (In re First Jersey Securities, Inc*.), 180 F.3d 504, 511 (3d Cir. 1999).  Absent proof that a debtor has contracted to pay for future services, or otherwise became legally obligated to pay for future services at a date prior to the date the services are provide, a debt arises with respect to those services when they are rendered.  *Id.*

Plaintiff has presented evidence, that the corporate overhead allocations set forth in Chart D, were allocated at the beginning of the year.  Plaintiff cites to a Ninth Circuit case, which notes that the terms "debt" and "claim" as defined by the bankruptcy code are broad and coextensive.  11 U.S.C. §§ 101(5) and (12); *In re Bullion Reserve of N. Am.*, 836 F.2d 1214, 1219 (9th Cir. 1988) (Court found creditor's right to demand bullion from debtor, though unmatured, constituted a "claim" under the Bankruptcy Code; and where creditor has a claim against debtor, the debtor owes a debt to creditor.);

---

[25] *See* PSUF #570, 581, 632, 643, 712, 722, and 733.

*Aerfi Group P.L.C. v. Barstow (In re Markair, Inc.)*, 240 B.R. 581, 583 (Bankr. D. Alaska 1999). Thus, under the broad definition of "debt" and "claim", Plaintiff argues that the Debtors were obligated to pay the debt at the beginning of the year, when the corporate allocations were set.

Defendant alleges that debtors were not legally obligated to pay the corporate allocations at the time of the transfers.[26] Specifically, Defendant cites to a Third Circuit case, for the proposition that debts for services are incurred when the services are performed. *First Jersey*, 180 F.3d at 511. However, the Court notes that *First Jersey* only references "legal services" and not service contracts generally. As such, the Court is not persuaded that a debt is incurred when services, other than legal services, are provided. Moreover, as set forth below, it is unclear whether Defendant was providing only services in return for the corporate overhead and management fees.

Here, the Court finds that there is a disputed fact as to when the debtors (Empire Land, ERC, and Prestige), or the consolidated Debtors,[27] became legally obligated to pay the corporate overhead allocations because it is unclear whether the corporate overhead allocations were exclusively for services. Neither party has provided sufficient evidence identifying contract terms or otherwise what was provided in return for the corporate overhead allocations and/or payment. As the Court is unable to determine contract terms or exactly what (and when) debtors (Empire Land, ERC, and Prestige) or the consolidated Debtors received in return for the corporate overhead/management fees, there is a question of fact as to when debtors became legally obligated to pay such fees. Accordingly, the Court finds that there is a disputed fact as to whether Defendant was a creditor at the time of the transfers in Chart D, and whether the transfers in Chart D were on account of an antecedent debt.

**3. Insolvency**

Defendant argues that Plaintiff cannot meet his burden in proving that Debtors were insolvent at the time of the transfers set forth in Chat D. Plaintiff relies on the expert reports of William Haegele ("Haegele") and Timothy Sullivan ("Sullivan") to establish debtors' (Empire Land, ERC, and Prestige)

---

[26] It is unclear whether Defendant is referring to the debtors who made the transfers (Empire Land, ERC, and Prestige), or the consolidated Debtors.

[27] The Court does not make any finding or determination at this time whether the antecedent debt must be owed to the individual debtor who made the transfer, or the consolidated Debtors.

insolvency.  *See* discussion *supra* regarding Insolvency in Section IV, B, 2.  For the reasons set forth above, the Court finds that Plaintiff has identified sufficient evidence to create a disputed fact as to debtors' (Empire Land, ERC, and Prestige) insolvency with respect to the transfers in Chart D.

### 4. Creditor Received More By Virtue of the Alleged Preference Than It Would Have in a Chapter 7 Liquidation

Defendant alleges that Plaintiff has failed to set forth sufficient evidence to establish that Defendant received more than it would have in a chapter 7 liquidation.  *See* discussion *supra* regarding Creditor Received More By Virtue of the Alleged Preference Than It Would Have in a Chapter 7 Liquidation, in Section IV, C, 2.  For the reasons set forth above, the Court finds that Plaintiff has identified sufficient evidence to create a disputed fact whether Defendant received more than it would have in a liquidation with respect to the transfers in Chart D.

### 5. Reasonably Equivalent Value

Defendant alleges that Plaintiff has failed to set forth sufficient evidence to establish that Defendant did not provide reasonably equivalent value for the transfers set forth in Chart D.  *See* discussion *supra* regarding Reasonably Equivalent Value in Section IV, B, 3.  For the reasons set forth above, the Court finds that Plaintiff has identified sufficient evidence to create a disputed fact whether debtors (Empire Land, ERC, and Prestige), and the consolidated Debtors, received reasonably equivalent value with respect to the transfers in Chart D.

### 6. Preference v. Constructive Fraud

As set forth above, the Court finds that Plaintiff has set forth sufficient evidence to pursue the transfers in Chart D under both a preference and constructive fraud theory.[28]  The Court notes that Plaintiff has presented evidence that a portion of a transfer may be a preference, and the remaining portion may be a constructive fraudulent transfer.  However at this time, the Court does not make any determination whether the transfers, or any part of the transfers, are preferences or constructively fraudulent transfers.

---

[28] The Court does not find that Plaintiff may recover the same funds under both theories.

E. Fraudulent Transfer (Intentional and Constructive Fraud)

| **Chart E: Intentional and Constructive Fraud Transfer** | | | | |
|---|---|---|---|---|
| **Defendant's Transfer #** | **Date of Transfer** | **Amount of Transfer** | **Debtor Alleged To Have Made Transfer** | **Second Amended Complaint Claim** |
| **89** | 3/30/2007 | $2,500,000.00 | Prestige | 11, 12 |

### 1. Initial Transferee/Conduit

Defendant alleges that no transfer actually occurred with respect to transfer 89, because Defendant only served as a conduit. Here, Plaintiff has presented Prestige's March 2007 bank statement, Acct # 1059, which reflects an electronic withdrawal in the amount of $2,500,000 on 3/30/2007, and Defendant's March 2007 bank statement, which reflects a deposit in the amount of $2,500,000 on 3/30/2007 from Acct # 1059 [Bransten Dec. Exhibits 9 and 11]. Additionally, Plaintiff has provided Prestige and Defendant's general ledgers which reflect a capital distribution from Prestige to Defendant in the amount of $2,500,000 on March 30, 2007 [Bransten Dec. Exhibits 15 and 17]. *See* discussion *supra* regarding Initial Transferee/Conduit in Section IV, A, 1. For the reasons set forth above, the Court finds that Plaintiff has identified sufficient evidence to create a disputed fact as to whether Defendant was an initial transferee with respect to transfer 89.

### 2. Fraudulent Intent

Defendant alleges that Plaintiff cannot establish evidence of fraud. Specifically, that Plaintiff cannot prove that each transfer was made with the "actual intent to hinder, delay, or defraud." 11 U.S.C. § 548(a)(1)(A); *Cal. Civ. Code* § 3439.04(a)(1). Here, Plaintiff has provided the e-mails between Mr. Ogren and Mr. Day [Bransten Dec. Exhibits 22 and 23]. *See* discussion *supra* regarding Fraudulent Intent in Section IV, A, 2. For the reasons set forth above, the Court finds that Plaintiff has identified sufficient evidence to create a disputed fact as to fraudulent intent with respect to transfer 89.

### 3. Insolvency

Defendant argues that Plaintiff cannot meet his burden in proving that Debtors were insolvent at the time of the alleged transfers. Plaintiff relies on the expert reports of William Haegele ("Haegele") and Timothy Sullivan ("Sullivan") to establish debtors' (Empire Land, ERC, and Prestige) insolvency.

*See* discussion *supra* regarding Insolvency in Section IV, B, 2.  For the reasons set forth above, the Court finds that Plaintiff has identified sufficient evidence to create a disputed fact as to debtors' (Empire Land, ERC, and Prestige) insolvency with respect to transfer 89.

### 4.  Reasonably Equivalent Value

Defendant argues that Plaintiff has presented insufficient evidence regarding reasonably equivalent value.  *See* discussion *supra* regarding Reasonably Equivalent Value in Section IV, B, 3.  For the reasons set forth above, the Court finds that Plaintiff has identified sufficient evidence to create a disputed fact whether debtors' (Empire Land, ERC, and Prestige), and consolidated Debtors, received reasonably equivalent value with respect to transfer 89.

###

Date: April 4, 2016

Mark Houle
United States Bankruptcy Judge